Good afternoon, Your Honors. May it please the Court, Counsel, and representing the defendant in this case, Reginald Guice. Mr. Guice was convicted in a jury trial of possession with intent to deliver a hundred or more grams of a substance containing heroin. Based on his prior convictions and pursuant to the Habitual Criminal Act, he was sentenced for possession with intent to deliver to a term of natural life imprisonment. The six issues are raised on appeal. The first issue he maintains he was not proved guilty of any of the charged offenses beyond a reasonable doubt. He therefore respectfully asks this Court in Issue 1 to reverse his conviction outright. Alternatively, in Issues 2, 4, 5, and 6, he seeks a remand for a new trial. He does so in Issue 2 based on the issuance of a search warrant for himself and his residence, but the complaint for the search warrant did not establish probable cause to believe that contraband would be found on this person or in his residence. In Issue 4, he seeks a new trial because a prosecution witness divulged inadmissible and prejudicial hearsay testimony. He seeks a new trial in Issue 5 because he was improperly impeached with a prior conviction, and he seeks a new trial in Issue 6 based on various incidents of prosecutorial misconduct in closing the argument. As a final alternative in Issue 3, Mr. Geist asks Your Honors to remand this cause to the Circuit Court for a France hearing with regard to the warrant. In the argument today, I'd like to focus on Issue 1, reasonable doubt, and time permitting, I would also like to discuss Issue 4, the improper hearsay testimony, and that aspect of Issue 6 that faults the prosecutor for urging the jury during closing argument to consider a prior inconsistent statement as substantive evidence. Of course, if Your Honors have questions about the other issues, I would be happy to address those as well. Now, the evidence of trial showed that Reginald and his brother Larry Geist lived in the same apartment complex, but in separate units. Defendants shared one with his mother. Larry lived in a different residence with his girlfriend and child. There was no evidence that defendant co-rented Larry's residence or paid anything towards rent or upkeep or any of the bills on Larry's residence. Now, one would expect the two brothers living in close proximity to each other would periodically visit each other's residences. In fact, both brothers testified at trial and testified that that was the case, but there was absolutely no evidence that defendant actually or constructively possessed any of the heroin found in Larry's residence. Furthermore, no fingerprints of the defendant in that residence, no fingerprints found by the, of the defendant, found on the approximately 169 grams of heroin found in the refrigerator of Larry's residence, and that was the amount that the state had to tie the defendant to in order to prove all of these offenses. Furthermore, Larry testified and claimed that all the heroin belonged to him. The defendant testified, denied having anything to do with the heroin. Now, the jury did hear evidence that prior to trial, Larry made a statement to the police in which he incriminated his brother and said the two of them were both involved in the drug dealing business. Now, this was a prior inconsistent statement. It was introduced only to impeach Larry's credibility. Larry testified that when he made the statement, he was in the police station, he was in custody, that his girlfriend was also in custody at the police station, and he said he gave the statement to the police falsely in order to protect his girlfriend, because the police had threatened that they would charge and keep his girlfriend in custody and take away his kids, and thus he incriminated Reggie. Now, of course, it was up to the jury to decide whether or not that testimony was truthful, but the important thing here is that that prior inconsistent statement could not be considered as substantive evidence, only to impeach Larry's credibility. I think what you just said was certainly a correct statement of the law on that issue, but what do you think juries in every case do when they're faced with a prior inconsistent statement in the real world out there? And let me put it another way. His statement that they were trying to impeach is, my brother has nothing to do with this heroin. Correct. So they impeach him, so there's two options. Brother has something to do with the heroin, or brother doesn't. Well, if you impeach his credibility and establish that he's lying when he said he didn't have anything to do with it, what's that leave? Well, the state still has to present evidence tying Reggie to that heroin and submit to the court that if the jury were to reject Larry's testimony, well, they would just reject Larry's testimony and take away, so to speak, from the defense side of the ledger, testimony by his brother that he doesn't have anything to do with the heroin. So that's something that favors the defendant, but now you take it away if the jury disbelieves it. Even if you take it away, though, you still have to have substantive evidence tying the defendant to that heroin. In addition, what your argument raises is something very troubling, and I think certainly is troubling to defense attorneys, but I think the case law trusts the rational prior effect in a jury trial, the jury, to consider evidence for a limited purpose if, in fact, it is only admitted for a limited purpose and not to consider it as substantive evidence. And here there was no instruction to the jury telling the jury that it could consider that as substantive evidence. The only other crimes instruction the jury received told the jury that a witness's prior inconsistent statement could only be considered as to the witness's credibility. So I would say that what the jury should have done, if they found that he was so impeached, Larry, that is, as to disbelieve his claim that Reggie had nothing to do with it, they should have, okay, we're not going to consider that in the defendant's favor, but they still had to find other evidence tying the defendant to the heroin. Can they use, can a jury use the fact that, okay, the defendant called this witness to say I had nothing to do with it, and clearly that witness is lying. Can they consider that as substantive evidence that he did have something to do with it? Well, I mean, if they find the witness is lying, I don't know that they can necessarily put it on the defendant. You put it on the witness, certainly. The witness got up. We don't believe his testimony. I don't know that the jury, even if the jury, you know, is upset with the defendant for that reason, that's still not proof beyond a reasonable doubt of a criminal act, at least the criminal act that he's charged with here in this case. But is it evidence? In other words, can you consider the fact that, okay, the defendant calls the witness, the witness says A, and there's two options, A or B, the witness comes in and says A, that guy is lying, so it must be B. Can a jury do that? The jurors might do that, but I would submit that that would violate the rule. That would not be appropriate. Jurors told to disregard evidence, for example, the idea is that they disregard it. Now, if they actually consider it in finding the defendant guilty, that's a problem. But if they're instructed to disregard, they're supposed to disregard. If they're instructed to consider it only for a limited purpose, it's only a limited purpose, there still has to be, in this case, other substantive evidence connecting the defendant with the drugs at Larry's residence. So there is no substantive evidence from your view connecting them? Well, not connecting them to that heroin. Now, the jury did hear evidence that approximately 7 grams of heroin was found at a third residence, a woman named Natalie Brady. Some of that heroin was found in containers in the kitchen, and the defendant's fingerprints were found on some of those containers. The state theorized that the defendant processed heroin at Natalie's residence, but that heroin was then stored at Larry's residence. Now, the defendant acknowledged knowing Natalie, said she was the mother of his cousin's children, so he periodically visited her residence, said he had nothing to do with heroin. Now, of course, the state could not establish or did not establish when the defendant's fingerprints were placed on those containers. And so for all the jury knew, the fingerprints could have been placed on the containers long before they came into contact with heroin. Of course, they could have found otherwise. Nonetheless, even if the jury did infer from this evidence that the defendant processed heroin at Natalie's residence, again, that was 7 grams. All of the charge defenses required a showing of at least 100 grams. The only place you have 100 or more grams is Larry's residence. And so even if the jury could find the defendant was involved with heroin at Natalie's residence, that didn't establish he had anything to do with the heroin at Larry's residence. It didn't establish that he processed the heroin found at Larry's residence or that he ever handled or had anything to do with heroin at Larry's residence. Now, there was also a trace or residue amount of heroin found on some plates at defendant Reginald's residence. Again, that was a minute amount, and the defendant submits once again. They also found packaging. There were some items found at the defendant's residence. A police officer testified those items could be legitimately bought and sold, have non-criminal uses, but also testified that some of those could also be used to process heroin. But also those packages were indeed in Natalie's residence, right? Playboy bunny package? I believe there might have been some packaging found at Natalie's residence. Again, the state's obligation here was to tie the defendant to the heroin at Larry's residence. And even the jury might have speculated from this evidence that the defendant had something to do with heroin. That's certainly a possibility based on all the evidence. Speculation, of course, does not arise to prove beyond a reasonable doubt. The state, again, had to show his involvement with the heroin at Larry's residence because he wasn't charged with a separate offense based on Natalie's. He wasn't charged with a separate offense based on anything found in his own residence. And, in fact, in another case decided by this court, People v. Brookhouse, this court stated that the state can't bring a single charge based on drugs and use different residences to combine those drugs into one charge. They can file separate charges as to each individual residence. The state didn't do that here. They filed charges, possession, possession with intent to deliver, conspiracy, but all of them required a showing of 100 grams or more. And that was only at Larry's. So, again, even if the jury suspected that the defendant had something to do with heroin, that wasn't enough. They had to tie it to the heroin at Larry's residence. Now, in addition, on the day in question, the day that the defendant and his brother were arrested, the police surveilled Larry's residence. They saw the defendant enter the residence. They saw him exit a short period of time thereafter. They had no evidence as to anything that happened inside the residence. Who was with him that day? I'm sorry, Erin? Who was with him that day? Well, when he entered the residence, he got into an automobile. The automobile was later stopped pursuant to the search warrant. His brother Larry was a passenger in the vehicle. Natalie Brady was a passenger in the vehicle. A fourth person, a second female, I believe her last name was Boyd, was also a passenger in the automobile. And the defendant, not Larry, the defendant, Reginald, had a key to Natalie's apartment on his key ring. The car key ring that he was driving. That's correct. Now, he testified it was actually his mother's vehicle. Again, Natalie was related to the family, a cousin marriage type of a relationship. He testified that she was a little bit scatterbrained, so to speak, periodically would lose her key, misplace her key, and so she gave a copy to his mother. Again, there was a relationship there. If the jury elected not to accept that explanation, that Natalie was a little spacey, would the fact that Larry didn't have a key to Natalie's apartment and Reginald did, is that enough to prove criminal drug conspiracy? I don't believe that's enough, Your Honor. The case law says that just based on evidence that there was a relationship among two or more individuals does not itself prove criminal conspiracy. But there was a fingerprint on the magic bullet that contained the heroin. There were fingerprints. In Natalie's apartment. And he acknowledged going over there, again, he said she was the mother of his kids, or excuse me, his cousin's kids. He said every now and then he went to the residence. He knew her. They socialized, what have you. And he said he may have touched items in her residence. Just as he and Larry acknowledged, they periodically went over to each other's residence. The fact that there was a relationship among people, even if one of them is involved in criminal conduct, there's no guilt by association. And so the defendant submits that just is not enough. When they did stop Reggie's vehicle, they searched Reggie, they searched the vehicle, barely searched everybody, and amounts of heroin was found on Natalie's person. No heroin was found on Reggie. No heroin found in his automobile. Counselor, you have one minute. Thank you. So the defendant maintains the jury may well have speculated here. There was evidence on which they could have speculated he had something to do with drugs. Defendant submits it just failed to prove, again, beyond a reasonable doubt, that he actually or constructively possessed the heroin at Natalie's or that he conspired with anybody. Larry claimed it was just him by himself. Reggie said he had nothing to do with it. Natalie did not testify. Well, let's say that there is enough there that he constructively possessed the heroin at Natalie's. You're saying there still isn't a link then between Natalie and Larry? There are two different residences. I mean, if there was a charge of 0 to 10, for example, and a grams, well, OK, there's 7 grams in Natalie's. There's not sort of conviction on that. And the state could have charged separately on that. State, in its wisdom, chose not to do so. It charged only the 100 grams or more. It took on the burden of tying the defendant to the drugs at Larry's. Even if he did possess the drugs at Natalie's, that separate conduct he wasn't charged with. Presumably he could have been charged with it. If he was and he was convicted, I wouldn't be arguing reasonable doubt as to that, only arguing as to all the charges, 100 grams or more, and the only place there was 100 grams or more was in Larry's refrigerator. And the defendant submits that they just didn't tie him to it, and so we respectfully ask your honors to reverse our right. Other issues set forth, requesting the alternate of a new trial, and certainly ask your honors to give those serious consideration in the event that you otherwise find that the evidence was sufficient to convict. Thank you, Mr. Fisher. Thank you, your honors. Ms. DeMichael. May it please the court, counsel, Laura DeMichael Bailon on behalf of the people. I have a quick preliminary note about a statement that was made that Natalie did not testify, which is also on page 5 of defendant's reply brief. The reason she wasn't called as a witness was because she couldn't be called. She had been murdered before defendant's trial, so any inference to be taken from Natalie not testifying, well, she just couldn't have been. The people will focus on issue one because defendant has, and I'd be happy to take questions on any other issues. Defendant was proven guilty beyond a reasonable doubt. The familiar common standard applies, so the evidence must be viewed in the light most favorable to the people, and it's the task of the jury to make the credibility determinations, which would include determining whether Larry's brother was credible, or whether Larry was credible when he said he did everything without defendant. The evidence here might be circumstantial, but it all fits together. Apartment F was where the amount of heroin that is needed to prove this conviction was found, but evidence from all three houses is relevant because it's all linked together. The Brook House case was a double jeopardy issue. It involved two charges, one in Will County, one in Cook County. It doesn't have any bearing as to what evidence is relevant to prove defendant's involvement in this conspiracy that links into the heroin in Apartment F. The heroin in Apartment F is linked to the Wisconsin residence because defendant's own witness testified that it was linked to the Wisconsin residence. Larry testified that the heroin found in his refrigerator was manufactured at Natalie Brady's and he testified that the reason it was manufactured at Natalie Brady's was so that if it was found, it wouldn't be found alongside all the manufacturing paraphernalia. So that link was made by defendant's own witness, although we did go on to say that defendant wasn't involved. But we know defendant was involved because I suggest to watch the video of the search warrants being executed on Natalie Brady's residence, the Wisconsin residence. It's not a protein shake assembly operation going on there. It's a heroin assembly operation going on there. There is paraphernalia and residue all over pretty much the entire first floor. There's foil. There are baby bottle liners, which are used to put, and even Larry testified how it was done using the materials at Natalie's. Line the baby bottle liners, blend it up, sift it, add a liquid, add a product to stretch it out, and then press it with a hand press into the little cylinder. And then the heroin that was found in the refrigerator was the same size and shape as the cylinder, and it even had little markings on it that would have been consistent with the use of the baby bottle liner. So defendant's fingerprints were all over those items at Natalie's house. There was a fingerprint on a bottle of Super Lactose, which was a cutting agent. The heroin at Larry's, was it cut with lactose? Did anybody testify to that? No one testified as to that. Oh, Larry testified that it had been manufactured at Natalie's. So I believe from Larry's testimony it could be inferred that it was cut with lactose because he also described the process of how it was made at Natalie's. And the officers testified that that is how it would have been made as well. So you're saying that the prints then at Natalie's of the defendant puts him into the manufacturing that then links him in with the quantity at his brother's? Yes. Besides being on the cutting agent, it was also on a magic bullet container, which was tested and discovered to have 1.1 grams of heroin in it. It was also on a plate that had residue on it, and a second magic bullet container there. I don't think there's any dispute by opponent that his prints are found at Natalie's. There may be an explanation, an innocent explanation, but they exist. Right. So now we're looking at how do you get to the quantity that he's charged with? Well, the link is that Larry testified how the whole purpose of using Natalie's house was so the drugs wouldn't be found. Larry said that the drugs in his fridge were made at Natalie's. And not only did he say that, but the size and shape was consistent with the paraphernalia found in the manufacturing assembly line in Natalie's kitchen. So it matched the baby bottle liner. It matched the size and shape of the cylinder. And Larry even just admitted that it had been made over there. Defendant had a key to Natalie's residence. Larry did not have a key. It was on his van keys. He had been seen driving that van that day. He drove the van with Natalie to Natalie's, went inside, although he denied going inside and officially testified he went inside. And then they went to defendant's brother's residence before they were eventually stopped by police, and then all of the residences were searched. Defendant's own residence also had items connecting him to the manufacturing of heroin regarding the little bunny insignia bags. I don't believe those were at the Wisconsin residence. I believe those were only found in the kit. There was a kit of essentially items used to manufacture heroin that was found in the hall closet in defendant's residence. And the same baggies were found in defendant's brother's bedroom drawer, I believe. But I don't think the Playboy bunny baggies were actually at Natalie's. Next to the kit of items that included a foil sifter, toothbrush, cutting agent, and Ziploc baggies with the bunny logo was a plate that had residue on it with defendant's fingerprint. Another magic bullet with defendant's fingerprint. This is at his house. At his house. There's also no user paraphernalia at his house. And elsewhere in the residence was a digital scale that also had residue on it and cannabis stems. So his involvement in heroin manufacturing is also tied from his residence, although the heroin that needed to be approved was found at Apartment F, which he's tied through his connection to the Wisconsin residence. So the people didn't rely on just where defendant had been the day of his arrest. They relied on all the evidence together to show the connection to the heroin manufacturing, specifically manufacturing the heroin that was found in Apartment F. So defendant was proven guilty beyond a reasonable doubt, and the people would ask that this court affirm his conviction and sentence. When you say Wisconsin residence, it wasn't Wisconsin the state? No, it was Natalie Brady's. And it was within walking distance of Larry and Reginald's or not? The testimony was that they drove to Natalie's from defendants and then drove back to Larry's, although Larry's and defendants were across from each other. I don't know what the distance was, but the testimony was that they drove. So it's certainly not as close as you would think. And that little trip that they observed and stopped on Bradley Avenue, the occupants of the car, what is that going to go to? Well, it shows his access and it shows just by itself. No, it doesn't prove that he committed the offenses. But combined with the other evidence, it does show his relationship with those two. It does show his connection to Natalie's residence. It was interesting that the officer testified that he went into that residence, but he testified that he didn't. So it shows him trying to distance himself from that residence on that day, because if he had walked in, it would have been obvious what was going on to him. Let me ask you something clear. When the defendant possessed this heroin, where was the heroin when he possessed it? At Natalie? Is he convicted on that? Or at Larry's? Or both? Both, because possession can be joint and constructive. So this heroin was worth $30,000. He didn't intend to abandon it and just give to his brother as a gift. He was involved in the processing of it at Natalie's. They were storing it at his brother's, but that didn't mean he intended to abandon his stake in that heroin at that time. So both. Are there any further questions? Well, we're back to how do we get to Larry's and the quantity. You're saying we get to the quantity he's charged with possessing, okay? And you agree there's no actual possession, am I correct? Or do you? I mean, there was no actual possession because he wasn't sitting there with it in his lap when it was found. So it would have to be constructive. So it's constructive possession because you believe you have involved him in the manufacture of that quantity that's stored at Larry's. Yes. And he shared the intent with Larry to deliver it. So he hadn't abandoned his possession of it just because. And he shared the intent to deliver how? He had manufactured it with the intent to deliver. It was $30,000 worth of heroin. Intent is only by quantity. By quantity and the fact that Larry and defendant both said that they didn't use and Larry said it was intended for sale in addition to the sheer quantity of it, the sheer how much it was worth. And the officers testified about what paraphernalia would be used versus that this was all manufacturing. Is the state required to prove possession as part of the conspiracy? The conspiracy, he had to have agreed with the other two that that offense would be committed. So I don't, as long as he agreed with them that it be committed, if one of the others of them possessed it, I believe that would be sufficient. With regard to this possession, but if somebody possesses 400 grams of heroin and yet by the time, and then he transfers it. He distributes it because that's what he had it for to begin with. But the police snatch the recipient, the buyer, the distributor, whoever else, but they can prove that he got it from this manufacturer who no longer possessed it. Can that person that manufactured it still be, even though he's, clearly when the police get there, he's not in possession, but can he still be charged and convicted of possession with intent to deliver it because until you did have it, even though you don't have it anymore and you had it with the intent to deliver it, Yes, he can. And I believe that defendant's reply brief even agreed that prior possession would have counted as possession. Prior possession? That he once had it in his... Which is why we're saying that Larry's stash was created over at Maddow's. And therefore, and the defendant was involved at Maddow's. The constructive possession is more than just, is wider than just, I have this now and no one can take it from me. So the people believe that the constructive possession was proved because he had, and he had prior actual physical possession of it when he was manufacturing it. So kind of both here. But by the time it was located, no one had it right in their hands. It was found in the refrigerator, but at certain points in the case, both actual and constructive. If there are no further questions, we will ask that this court affirm the defendant's conviction and sentence. Thank you. Thank you. Mr. Fisher is in the back. Thank you. Counsel references the fact that the record shows that Natalie Brady was murdered prior to trial. That's true. There's some indication that her dead body was found in Chicago sometime between the charge, when the charges were brought and when trial took place. Was she charged before she was murdered? That is a very good question, Your Honor. I don't expect you to know just yet. Yeah, I'm not, I think you may be. She was out on bond. Okay. I don't mean to mislead the court. I mean to infer that by her not testifying, that means if she would have testified, she would have necessarily cleared the defendant on what she would have said if she would have testified, simply pointing the fact out that she did not testify and that in looking at evidence of conspiracy, you might look to what did the other conspirators or alleged conspirators have to say about all this. The jury never heard from Natalie. The only other alleged... To that there was no testimony. That is factually correct. That's factually correct. It's so hard to prove an agreement with a dead woman. Well, they would have to prove it. You could have proved it if Larry would have said, oh yeah, we're all in this together, and he didn't. Now the state argued to the jury, and I believe the state also argues on appeal, that there was testimony from Larry that there was at least a conspiracy between him and Natalie, and that's not factually correct. Larry's testimony was that he paid Natalie in small amount of drugs for the use of her home to process heroin. I would submit that that is not a conspiracy. It may be, on her part, the offense of permitting unlawful use of the building. Certainly a crime on Larry's part, delivering drugs to her, a crime on her part, possessing drugs. But if you give somebody something for the use of their property, that's not a conspiracy unless Larry had testified that Natalie was going to share in the proceeds of the drug dealing business, and that wasn't the testimony at all. So there wasn't even a conspiracy established between Larry and Natalie. In any event, the important thing is there was not sufficient evidence of a conspiracy between the defendant and anyone else. The state talked about the items found in Natalie's residence, and in their brief on appeal, the state argued that the heroin found at Natalie's residence matched in physical description the heroin found at Larry's residence, and therefore must have been the same items used to manufacture both, and Larry's testimony might seem to support that idea. But interestingly, the police officer who testified about processing in general testified that he could not say that there was a match between the heroin at Larry's and the heroin at Natalie's. He said it appeared to be consistent. That's as far as he could go. And so there was no specific evidence that the heroin at Larry's was processed at Natalie's. Most importantly, I come back to the point that there was no specific evidence that the defendant had a hand in processing any of the heroin found at Larry's residence, Larry's residence being the key to this whole case. Again, the jury may have speculated that that was so, and the defendant said that's just not enough, that's not proof beyond a reasonable doubt. Well, so the bottom line is, was there enough evidence to allow the jury to reasonably infer that the heroin at Larry's came from Natalie's? Even if they could infer that, I don't think they had enough to show that it was the defendant doing it. Well, you would have to, because the state almost had to prove that if in fact the defendant, and I say if, because again, we don't know when those fingerprints were placed on the containers in Natalie's, and there was no testimony from the defendant or Larry that the defendant was processing heroin at Natalie's in any event. Well, if the defendant testified to that, it wouldn't be here. That's true, sure, sure, that's true. Maybe most importantly, Larry didn't testify to that. There's no other witness who testified to that. But to make this case, the state would have to show that the heroin that was found at Larry's was either only processed by the defendant or processed by the defendant in conjunction with somebody else who was also involved in processing it all at the same time. And so even if the jury can say, well, okay, it looks like maybe the heroin at Larry's was processed at Natalie's based on testimony from Larry and based on a contraband, some contraband being found at Natalie's, they still, in order to prove the case, they still have to find beyond reasonable doubt that the defendant was involved in processing that heroin. Not just that he had, even at some point, processed some heroin at Natalie's. Thank you. That's it. Even if they thought that, well, at some point, he processed, the defendant processed some heroin at Natalie's. You're missing identity. That's not enough. You're missing identity. That's right. That's right. And again, the state could have charged him with an offense, arguably based on what they found at Natalie's. Maybe they could have charged him with an offense based on trace heroin found at his own place. They took on the burden of proving 100 or more grams. Had they done that, let's go back to that. Had they done that, and you're saying it would be a tighter case, okay, the trace or... It would be a stronger case, sir. Seven grams or less at Natalie's. How does that affect, and he were convicted. How would that affect on an individual criminal act? Would that qualify as the third and striping her out? It's an interesting question, and I'd have to go back. I don't believe the trace would. I'm not even sure that the seven grams would, although we'd probably have to go to the statute book and double check. Yeah. Don't hold me to it. I don't believe so, but I'm not positive. But he was just sentenced on the possession of intent, right? That's correct. That's correct. But the jury, there were findings of guilt on it. If I were to give to you both, of course, the general principle is that if you're convicted of both the actual offense and the in-court or the attempt to commit that offense, you can only be sentenced for the actual underlying offense. Defendant's challenge is both here, although your honors, I suppose, would have discretion to only rule on the possession with intent to deliver and perhaps remand the defendant's position as they didn't prove either. And so in the interest of judicial economy, ask your honors to find that he was not proved guilty of either. But your honor is technically correct. He was only sentenced on the possession with intent to deliver. So my question is kind of like Judge Hogan's, is would the conspiracy conviction make it to qualifying? I believe the conspiracy would have. I believe. Thank you, your honors. Thank you, Mr. Michael. Thank you also. The matter will be taken under advisement. Written disposition will be issued sometime. And right now the court will be in a brief recess for a panel change before the next case.